[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (#131)
 FACTS
The plaintiff, Andrew Lance, filed an amended complaint on April 6, 1999. In the first count of his amended complaint, the plaintiff alleges the following facts.[1] On or about October 5, 1994, the defendants, Ronald Lyman, d/b/a Lyman Commercial and Tyler E. Lyman, Inc. (collectively, the defendants) entered into an agency agreement with R. Realty Co. and/or Edward Rosen (collectively, R. Realty). Under the agreement, R. Realty agreed to pay the defendants a commission of 10% of any gross sales price on certain property R. Realty wished to sell. The plaintiff was an attorney at law in the state of New York, who represented Defender Industries, Inc. (Defender). On or about March 20, 1995, the plaintiff entered into an oral agreement with the defendants. Pursuant to the agreement, the plaintiff agreed to obtain Defender as a buyer and to negotiate on behalf of Defender, while the defendants agreed to pay the plaintiff half of any commissions collected by the defendants as a result of the sale. The closing transferring the property to Defender took place on July 31, 1996, but the plaintiff never received any commission.
On July 11, 1996, the defendants filed in this court an action bearing Docket No. CV96-0537977, seeking payment of the defendants' commission from R. Realty. On August 7, 1998, that action was settled in full, and pursuant to the settlement, R. Realty paid the defendants $68,750.00. The plaintiff claims that pursuant to his oral agreement with the defendants, the plaintiff is entitled to 50% of that amount and that the defendants have refused the plaintiff's demand for payment. The plaintiff seeks compensatory and punitive damages, prejudgment interest, attorney's fees, costs and such other relief as the court deems just and equitable.
Throughout the pendency of this action, the defendants have repeatedly maintained that the plaintiff is barred from recovering any commissions allegedly agreed to by the parties, because the plaintiff is not a licensed real estate broker or salesperson under General Statutes §20-312 (a).[2] The defendants first raised the argument in a motion to strike filed on April 23, 1999. The court, Mihalakos, J., in a memorandum of decision issued on July 21, 1999, held that the plaintiff, as an attorney-at-law, was exempt from the licensing requirement of § 20-312
(a), because of the exception contained in § 20-329 (b), which provides: "The provisions of this chapter concerning the licensure of real CT Page 14199 estate brokers and real estate salespersons shall not apply to . . . service rendered by any attorney-at-law in the performance of his duties as such attorney-at-law. . . ." General Statutes § 20-329 (b). The court therefore denied the defendants' motion to strike.
The defendants next raised their argument by way of two special defenses filed with their answer on August 13, 1999. In the fourth special defense, the defendants alleged that because the plaintiff was not a licensed real estate broker or salesperson at the time of the co-brokerage agreement, the plaintiff's claim is barred by General Statutes § 20-325a (a).[3] In the fifth special defense, the defendants alleged that the plaintiff, in claiming a co-brokerage commission, was acting as a real estate broker or salesperson without a license in violation of General Statutes § 20-312 (a). On August 19, 1999, the plaintiff filed a motion to strike the fourth and fifth special defenses, which was granted by the court on November 1, 1999.
On November 15, 1999, the defendants filed an amended answer containing several new special defenses. In the tenth special defense, the defendants alleged that section 20-328-8a of the Regulations of Connecticut State Agencies prohibits the defendants from paying a commission to the plaintiff, and that enforcement of the co-brokerage agreement would therefore violate public policy. In the eleventh special defense, the defendants alleged that compensation of the plaintiff would violate General Statutes § 20-329f[4] because R. Realty did not give its informed written consent to the co-brokerage agreement. On December 28, 1999, the plaintiff filed a motion to strike the tenth and eleventh special defenses on the ground that the regulation and statute cited by the defendant are inapplicable to an attorney-at-law in accordance with General Statutes § 20-329. The court granted the motion to strike without a written memorandum of decision on January 27, 2000. The defendants filed a motion for articulation on February 10, 2000, which was granted by the court on March 6, 2000. The court's articulation read, in full, "The Motion to Strike was granted because the plaintiff is an attorney at law."
On February 14, 2000, the defendants filed a motion for an extension of time in which to file revised special defenses. In the motion, the defendants requested "until fifteen (15) days after notice of a decision on defendants' Motion for Articulation dated February 8, 2000 is issued." The motion for extension of time was granted on March 6, 2000. Notice of the court's ruling on the motion for articulation was issued on March 7, 2000. The defendants filed a "revised amended answer, special defenses, and counterclaims" on March 24, 2000. The revised tenth and eleventh special defenses invoke the same statute and regulation as the previous tenth and eleventh special defenses stricken by the court on January 27, CT Page 14200 2000.
On April 3, 2000, the plaintiff filed a motion to strike the tenth and eleventh special defenses on the grounds that the revised amended answer was filed without the requisite approval of the court as required by Practice Book § 10-60 and that the regulation and statute upon which the defendants rely are inapplicable to an attorney at law under General Statutes § 20-329. The plaintiff's motion to strike is accompanied by a memorandum of law, and the defendant filed an objection to the motion to strike and a memorandum of law on April 19, 2000. The motion to strike was granted by the court after it mistakenly appeared on the May 1, 2000 short calendar. On May 16, 2000, the defendants filed, and the court granted, a motion to reargue the motion to strike.
 MOTION TO STRIKE
The plaintiff first moves to strike the revised amended answer, special defenses, and counterclaims on the ground that they were filed in violation of Practice Book § 10-60.[5] A motion to strike is a proper vehicle to raise a claim that a defendant has filed a pleading in violation of Practice Book § 10-60. Northeast Gunite GroutingCorp. v. Chapman, 20 Conn. App. 201, 204, 565 A.2d 256 (1989).
The defendants do not argue that their revised amended answer was amended by way of any of the methods provided in Practice Book §10-60. Instead, the defendants argue that the revised amended answer was filed within the fifteen day extension period following the court's decision on the motion for articulation. As stated above, however, the motion for articulation was granted on March 6, 2000, with notice being sent to the parties on March 7, 2000. The defendants filed their revised amended answer seventeen days later, on March 24, 2000. The fifteen day extension period therefore may not be relied upon to remove this case from the requirements of Practice Book § 10-60.
The defendants argue, however, that the revised amended answer was filed within fifteen days after they received notice of the court's articulation. As stated above, the defendants were granted an extension "until fifteen (15) days after notice of a decision on defendants' Motion for Articulation dated February 8, 2000 is issued." (Emphasis added.) That the defendants filed their amendment within fifteen days of receiving the court's articulation is therefore irrelevant.
Finally, the defendants argue that the court should exercise its discretionary powers to allow the revised amended answer to stand, despite the late filing. The Appellate Court has stated that "[t]he granting or denial of a motion to amend the pleadings is a matter within CT Page 14201 the trial court's discretion. . . . In the interest of justice courts are liberal in permitting amendments; unless there is a sound reason, refusal to allow an amendment is an abuse of discretion." (Citations omitted; internal quotation marks omitted.) Baker v. Cordisco, 37 Conn. App. 515,522-23, 657 A.2d 230, cert. denied, 234 Conn. 907, 659 A.2d 1207 (1995). In the present case, however, the defendants have not filed a request to amend their answer, but have simply filed a new answer without first obtaining leave of the court. The issue of whether to allow the amendment is therefore not properly before the court. See Practice Book §10-60.
Furthermore, the revised tenth and eleventh special defenses are substantially identical to the previous tenth and eleventh special defenses that were stricken by this court. Both the previous defenses and the present defenses allege that enforcement of the co-brokerage agreement would require the defendant to violate section 20-328-8a of the Regulations of Connecticut State Agencies General Statutes and General Statutes § 20-325f. The court therefore has a sound reason to refuse the amendment. The interests of justice would not be served by allowing the pleading of special defenses substantially identical to previously stricken special defenses. See Baker v. Cordisco, supra,37 Conn. App. 522-23. This is especially true in the present case because the court has repeatedly ruled that the real estate broker and salesperson licensing requirements do not apply to the plaintiff, who is an attorney at law.
Because the defendants have failed to file a request for leave to file an amended pleading as required by Practice Book § 10-60, the plaintiff's motion to strike the revised amended answer, special defenses, and counterclaims is granted.
 MOTION FOR SANCTIONS
The plaintiff also requests that the court sanction the defendants pursuant to Practice Book § 10-61(b), which provides that "[i]f the amendment occasions delay in the trial or inconvenience to the other party, the judicial authority may award costs in its discretion in favor of the other party."
The court will not at this time exercise its discretionary powers to award costs to the plaintiff. If, however, the defendant continues to file amended pleadings raising issues upon which the court has already ruled, the court will entertain the possibility of any appropriate sanctions at that time.
 CONCLUSION CT Page 14202
Because the defendants have failed to file a request for leave to file an amended pleading as required by Practice Book § 10-60, the motion to strike the revised amended answer, special defenses, and counterclaims is granted. The motion for sanctions is denied.
D. Michael Hurley, Judge Trial Referee